ARTHUR LEE MILLER *et al.* Appellees, *vs.* BERNICE MAY-FIELD MILLER, Appellant.

*Opinion filed February 17, 1915.*

1. TRUSTS—*what is not sufficient to establish a constructive trust.* A constructive trust cannot be established merely by showing that one who has obtained the legal title to property for a specified purpose upon his oral promise to convey to a third person or to re-convey to the grantor refuses to perform such promise or denies the existence of the trust.

2. SAME—*constructive trusts divided into two general classes.* Constructive trusts are divided into two general classes, one consisting of those cases in which actual fraud is considered as equitable ground for raising the trust, and the other of those cases in which the existence of a confidential relation and subsequent abuse of the confidence reposed is sufficient to take the case out of the Statute of Frauds.

3. SAME—*what facts are sufficient to establish a constructive trust.* The facts that a wife reposes confidence in the business judgment of her husband, who was a successful business man, and conveys her one-third interest in real estate to him to enable him to hold the legal title in order to borrow money to erect a building upon the land, without consideration other than his promise to re-convey her interest to her as soon as the mortgage debt was paid, are sufficient to raise a constructive trust in her favor as against the heirs of her husband.

4. SAME—*what does not exonerate personal estate from payment of mortgage debt.* The fact that a wife conveyed her interest in land to her husband upon his agreement that if she would make the conveyance and he should die intestate and childless before paying the mortgage indebtedness which he contemplated putting upon the land she would inherit all his personal estate,

exonerated, as between her and the husband's heirs, from the burden of payment of the mortgage debt, is not sufficient to exonerate the personal estate from the payment of the mortgage debt, as equity will not create a constructive trust for the mere purpose of enforcing a contract.

APPEAL from the Circuit Court of Logan county; the Hon. T. M. HARRIS, Judge, presiding.

McCORMICK & MURPHY, and LEFORGEE, VAIL & MILLER, for appellant.

C. EVERETT SMITH, FRED I. EDGELL, and THOMAS D. MASTERS, (HARDIN W. MASTERS, of counsel,) for appellees.

Mr. JUSTICE COOKE delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Logan county for the partition of the real estate of Leonard Miller, deceased, among Bernice M. Miller, the appellant, and Arthur L. Miller and Rovina Miller, the appellees.

Leonard Miller was a resident of the city of Lincoln, in Logan county, and died intestate April 17, 1913, leaving surviving him, as his only heirs-at-law and next of kin, the appellant, Bernice M. Miller, his widow, and appellees, Arthur L. Miller, his brother, and Rovina Miller, his mother. He died seized of a portion of lots 7 and 8, in block 9, of the original town of Lincoln. These premises were improved by a three-story business building. The first floor and basement were occupied and used by Miller, at the time of his death, as a dry goods store. The second and third stories were designed for flats and offices. Miller and his wife lived in one of the flats and the other flats and the offices were occupied by tenants. This property was encumbered by a mortgage given the Sangamon Loan and Trust Company of Springfield, Illinois, to secure the payment of two notes for $10,000 each, executed August 17,

1908, and maturing August 17, 1913, bearing interest, annually, at the rate of five and five and one-half per cent, respectively. Thomas G. Miller, the father of Leonard Miller, died intestate in the city of Lincoln December 2, 1912, seized of a lot upon which he resided at the time of his death. He left surviving him as his only heirs-at-law and next of kin the said Rovina Miller, his widow, and the said Leonard Miller and Arthur L. Miller, his only children or descendants. After the death of Leonard Miller the real estate owned by Thomas G. Miller at the time of his death was sold by Rovina Miller, Arthur L. Miller and Bernice M. Miller for the sum of $2482, the whole of the purchase price being paid the said Arthur L. Miller and no part of the same has ever been paid to appellant. Appellant was appointed administratrix of the estate of her husband and continued the conduct of the dry goods business and retained possession of the premises owned by her husband at the time of his death, residing thereon as she had done theretofore and collecting rents from the various tenants.

On August 12, 1913, appellees brought this suit for partition and for an accounting. Later an amended bill was filed, which alleges the death of Leonard Miller, intestate; his seizin of a part of the said lots 7 and 8; the mortgage indebtedness owing to the Sangamon Loan and Trust Company; that there is now sufficient money and personal property in the hands of the administratrix to pay all of such indebtedness, and that since the death of Leonard Miller appellant has been in possession of the premises and has collected the monthly rental due from the various tenants. The bill then sets up the interests of the co-tenants and prays for an accounting; that the appellant, who was also made a defendant as administratrix, be directed to pay the amount due the Sangamon Loan and Trust Company out of the personal estate, and that a division and partition of the premises be made among appellees and appellant, subject to the dower and homestead rights of appellant.

Appellant, in her own right and also as administratrix, filed answers to the bill. In her answer as administratrix she alleges the death of said Thomas G. Miller, intestate; that he was seized of the real estate referred to at the time of his death; that it was sold after the death of Leonard Miller and that the whole of the purchase price was paid to appellees and is now held by them; that at the time of his death the said Thomas G. Miller was indebted to Leonard Miller, and asks that upon any accounting that may be had there be included an accounting for the purchase money received by appellees for the sale of the real estate owned by Thomas G. Miller at the time of his death.

Appellant also filed a cross-bill, in which she alleged that her father, Abram Mayfield, died October 22, 1898, leaving the appellant, his daughter, Fred S. Mayfield and William F. Mayfield, his sons, and Lucy F. Mayfield, his widow, as his only heirs-at-law him surviving; that at the time of his death the said Abram Mayfield was seized in fee simple of the premises sought to be partitioned; that Abram Mayfield died intestate on or about October 22; that said Lucy F. Mayfield died March 28, 1913; that on March 1, 1903, appellant married Leonard Miller, who for many years had owned and conducted a retail dry goods business in the city of Lincoln; that he was a successful merchant and his business was in a flourishing condition, and that prior to June, 1905, he became desirous of changing the location of his business and providing for a larger and more modern building in the business district of the city; that he conceived the idea of locating his business on the premises owned by appellant and her said brothers; that said Miller formulated a plan to purchase from the two brothers of appellant their undivided two-thirds interest in said premises; that his personal estate was not sufficient at that time to enable him to purchase this interest and erect upon the premises the character of building he had planned without borrowing the sum of $20,000, to be se-

cured by a mortgage upon the premises; that in order to raise this amount of money by way of mortgage he desired to take the whole title in his own name; that it was his intention in securing the undivided one-third interest of appellant to enable him more readily to borrow the money necessary to be used in improving the premises; that it was then and there the intention, as between the said Miller and the appellant, to pay off the mortgage indebtedness as soon as possible entirely out of the rents, issues and profits of the real estate so to be acquired and improved by him, and if it became necessary to foreclose the mortgage it was the desire and intention, as between him and appellant, that the undivided two-thirds interest acquired by him from the said brothers of appellant should exonerate the undivided one-third interest which he contemplated acquiring from appellant, from the lien of the mortgage; that in pursuance of this plan he contracted with the said brothers of appellant for the purchase of their undivided two-thirds interest in the premises; that he thereupon represented to appellant that he desired her to convey to him her undivided one-third interest in the premises; that at that time appellant was unacquainted with business matters and had no experience whatever in the retail dry goods business, and in these matters placed implicit confidence, reliance and faith in her said husband and in her brother, the said Fred S. Mayfield; that thereupon the said Miller and the said Fred S. Mayfield stated and represented to appellant the plan conceived by Miller for the improvement of the premises, and said Miller requested appellant to convey to him her undivided one-third interest in the said premises; that it was then and there agreed by him and appellant, and was expressly promised to appellant by said Miller, that if she would convey to him her interest in the premises he would cause a mortgage to be placed upon the premises for the improvements contemplated, to be paid out of the rents, issues and profits to be derived therefrom, and that in event of a fore-

closure of the mortgage the undivided one-third interest of
appellant should stand, as between her and said Miller or as
between her and his heirs-at-law, exonerated by the other
undivided two-thirds interest; that said Miller further rep-
resented to her that in the event of his death before the
mortgage was paid off, and in the event they should remain
childless, (as they then were,) as he understood the law
the mortgage upon the premises would be charged in pref-
erence to the real estate rather than to his personal estate,
so that she need not fear that the amount of his personal
estate coming to her in the event of his death would be
diminished by reason of the mortgage indebtedness, inas-
much as the value of the undivided two-thirds interest in
the premises would be amply sufficient to discharge the
mortgage debt; that she thereupon conveyed to her said
husband her undivided one-third interest in the premises on
June 10, 1905, relying upon the promises and representa-
tions so made, believing them to be true, and relying par-
ticularly upon a promise to re-convey to her the undivided
one-third interest in the property and that the mortgage in-
debtedness would be paid solely out of the rents, issues and
profits of the real estate, and upon the understanding of her
said husband that in the event of his death the undivided
two-thirds interest in the real estate would be ample to dis-
charge the mortgage indebtedness, and would, as between
his next of kin and his heirs-at-law, be the primary fund
for the payment of the same. It is further alleged that
appellant received no other consideration for this convey-
ance than the said promise so made to her; that the plan
and scheme for procuring the title to said premises were
not at the instance or request of the appellant, nor did she
outline or plan the same as a scheme for the distribution
or disposal of her property for her personal purposes, as a
trust agreement or as a settlement of her property in trust,
but that said plan was wholly and entirely a part of her said
husband's business venture, was assented to by her solely

at his suggestion and instigation and was not suggested by her. The cross-bill then alleges the construction of the building upon the premises, the placing of the mortgage thereon and the conducting by said Miller of his dry goods business therein until the time of his death; that had he lived the said Miller would have kept his promises made to appellant; that an undivided two-thirds interest in the premises is amply sufficient to discharge the mortgage indebtedness; that having fully performed her agreement and contract with her said husband, the appellant is entitled, as against appellees, to have a conveyance of an undivided one-third interest in said premises free and clear of the mortgage lien, and is also entitled, as against them, to have the mortgage debt declared to be primarily a lien upon the other two-thirds of the premises in order to exonerate the personal estate of the said Miller.

Appellees interposed a general and special demurrer to the cross-bill, the special grounds set up being that the supposed agreement and promises were within the provisions of sections 2 and 9 of the Statute of Frauds. This demurrer was sustained, and appellant having elected to stand by her cross-bill the same was dismissed for want of equity.

The cause was referred to the master, who took the proofs and reported, finding that the material allegations of the bill were true; that there is due on the mortgage indebtedness the sum of $20,552.22; that said Leonard Miller died leaving personal property to the amount of $36,000, and that the mortgage indebtedness should be paid out of the personal estate as a charge primarily against said personal estate. The master further found that the premises of which said Thomas G. Miller died seized had been sold for $2482; that Arthur Lee Miller had received all of this money and had made no accounting of it; that the accounts offered in behalf of the appellant, as administratrix, tending to show an indebtedness from Thomas G. Miller, at the time of his death, to the said Leonard Miller were

rejected as not a proper charge against the share of Arthur L. Miller and Rovina Miller in the proceeds of the sale of said property; that after allowing Rovina Miller the present value of her dower interest in the proceeds from said sale, Arthur L. Miller should be ordered to account to appellant for her proportionate share of the sum realized from the sale of such real estate.

Objections were filed on both sides to the report of the master, which, having been overruled, were presented to the chancellor as exceptions to the master's report. The chancellor sustained the exceptions of appellant to that part of the master's report rejecting her account against the estate of Thomas G. Miller, and found that there was owing from said Thomas G. Miller, at the time of his death, to Leonard Miller, the sum of $815, which amount was decreed to be paid appellant, as administratrix, out of the proceeds of the sale of said real estate owned by Thomas G. Miller at the time of his death in the accounting between appellant and appellees. The decree otherwise was in accord with the prayer of the original bill. By the decree Arthur Lee Miller was directed to pay out of the proceeds arising from the sale of the real estate owned by his father at the time of his death, to appellant, the sum of $815, and it was ordered that the remainder of such sum should be divided among the appellant and the appellees according to their respective interests as the widows and heirs-at-law of Thomas G. Miller and Leonard Miller, respectively; that appellant, as administratrix, should pay the amount due the Sangamon Loan and Trust Company within thirty days, and in the event of her failure to do so that the amount should be made a specific charge and lien against her interest in the real estate of her deceased husband, and that her rights in said real estate should relieve and discharge the interests of appellees from contributing to any extent in the discharge of the mortgage indebtedness. Appellees assign cross-errors to the action of the court in allowing appellant,

266 – 34

as administratrix, the sum of $815 as the amount owing from the estate of Thomas G. Miller to her intestate.

As the same are summarized in the statement of appellant, the questions presented for determination are: (1) Does the cross-bill disclose an equitable interest in appellant in an undivided one-third of the property by way of a constructive trust? (2) Should the real estate in question, under the averments of the cross-bill, as between appellant and appellees, exonerate the personal property from the payment of the mortgage indebtedness? (3) On the accounting should appellant be credited with the amount of the interest payments on the mortgage indebtedness paid by her since the death of her husband? (4) Should appellant be credited on the accounting with $815, the amount Thomas G. Miller owed Leonard Miller at the time of his death?

The cross-bill, to which a demurrer was interposed and sustained, set up a trust in favor of appellant in one-third of the real estate of which her husband died seized. Appellees contend that the demurrer was properly sustained because this trust is an express trust, and as it was not manifested by some writing signed by Leonard Miller it cannot be enforced; while appellant insists that the trust set up in the cross-bill is a constructive trust, which is not required to be manifested by any writing, and that the court therefore erred in sustaining the demurrer to the cross-bill.

That an express trust cannot be established by parol is not only expressly provided by section 9 of our Statute of Frauds, but has been so frequently declared by this court as to render the citation of authorities unnecessary. The question arising in most of the cases presented, as in the case at bar, has been whether the trust in controversy was within the proviso to said section 9, which reads as follows: "*Provided,* that resulting trust or trusts created by construction, implication or operation of law, need not be in writing, and the same may be proved by parol."

The appellees contend that in order to establish a constructive trust the transaction by means of which the title to property is obtained must be a scheme of actual deceit, amounting to positive fraud, while the appellant insists that actual or positive fraud is not a necessary element of a constructive trust. Both parties cite decisions rendered by this court in support of their respective contentions. An examination of those cases discloses an apparent conflict in the decisions. One rule has, however, been uniformly recognized, viz., that a constructive trust cannot be established by merely showing that one who has obtained the legal title to property for a specified purpose upon his oral promise to convey to a third person or to re-convey to the grantor, refuses to perform such promise or denies the existence of the trust. The apparent conflict in the cases occurs when the attempt has been made to state what additional facts must be shown.

The principles upon which equity raises constructive trusts, rather than statements found in adjudicated cases, which necessarily refer to the particular facts under consideration, must be considered in determining whether a constructive trust will be declared under a given state of facts. A constructive trust is solely the creature of a court of chancery and is established upon purely equitable grounds. In *Alwood* v. *Mansfield,* 59 Ill. 496, the following general rule taken from Hill on Trustees was adopted by this court: "Whenever the circumstances of a transaction are such that the person who takes the legal estate in property cannot also enjoy the beneficial interest without necessarily violating some established principle of equity, the court will immediately raise a constructive trust and fasten it upon the conscience of the legal owner, so as to convert him into a trustee for the parties who in equity are entitled to the beneficial enjoyment." It is an established principle of equity that one will not be permitted to derive any benefit from his own fraud, and the most frequent application of

the rule above quoted is found in cases where one obtains the legal title to property by means of actual or positive fraud. Indeed, the discussion in some of the cases, where no other equitable ground appeared or was urged, might lead one to the conclusion that actual or positive fraud is the sole ground upon which a constructive trust will be declared by a court of equity. Thus, in *Davis* v. *Stambaugh,* 163 Ill. 557, it was said: "In order to take the case out of the statute and establish a trust *ex maleficio* the transaction by means of which the ownership of property is obtained must be, in fact, a scheme of actual deceit; in other words, there must be an element of positive fraud accompanying the promise and by means of which the acquisition of the legal title is wrongfully consummated, (2 Pomeroy's Eq. Jur. secs. 1055, 1056,) otherwise the Statute of Frauds would be virtually abrogated;" and the same statement appears in *McHenry* v. *McHenry,* 248 Ill. 506. Again, in *Ryder* v. *Ryder,* 244 Ill. 297, it was said: "In order to raise a trust *ex maleficio* there must be an element of positive fraud in the transaction;" and the discussion upon this subject in other cases cited by appellees proceeds upon the apparent assumption that actual or positive fraud must be shown in order to raise a constructive trust. That constructive trusts are not limited to cases in which it appears that actual fraud has been perpetrated in obtaining the legal title is apparent from a consideration of the general principles upon which such relief is granted by a court of equity. On the contrary, the doctrine was announced in *Allen* v. *Jackson,* 122 Ill. 567, and has been quoted with approval in many subsequent cases, that "where a person obtains the legal title to property by virtue of a confidential relation and influence, under such circumstances that he ought not, according to the rules of equity and good conscience as administered in chancery, to hold and enjoy the beneficial interests of the property, courts of equity, in order to administer complete justice between the parties, will raise

a trust, by construction, out of such circumstances or re-
lations, and this trust they will fasten upon the conscience
of the offending party, and will convert him into a trustee
of the legal title, and order him to hold it or to execute
the trust in such manner as to protect the rights of the de-
frauded party and promote the safety and interests of so-
ciety." This rule was quoted with approval and followed
in *Pope* v. *Dapray*, 176 Ill. 478, and it was there pointed
out that "as a general rule one of two elements is necessary
on which to base or establish a constructive trust. There
must be some element of fraud, either positive or construct-
ive, which existed at the time of the transaction and which
influenced the *cestui que trust*, or there must exist a con-
fidential relation and influence by virtue of which one has
obtained the legal title to property which he ought not, ac-
cording to the rules of equity and good conscience, to hold
and enjoy." In commenting on the case of *Davis* v. *Stam-
baugh, supra,* it was there said: "In that case we held that
the evidence did not show a constructive trust, and that the
mere refusal of a trustee to execute an express trust, or the
denial of the existence of a trust by the trustee, does not
constitute such fraud as takes the case out of the statute.
What is further said in that case is not in conflict with the
views herein expressed, that as between parent and child,
or those occupying a position of trust or confidence, the
fraud may be constructive and may be shown by such facts
and circumstances as demand equitable relief."

The cases decided by this court involving constructive
trusts may therefore be divided into two general classes:
One consisting of those cases in which actual fraud is con-
sidered as an equitable ground for raising a constructive
trust, and the other consisting of those cases in which the
existence of a confidential relation and the subsequent abuse
of the confidence reposed is considered sufficient to take the
case out of the statute. It would be useless to discuss the
cases belonging to the former class, as it is clear from the

allegations of the cross-bill that Leonard Miller did not obtain the conveyance from the appellant by actual fraud. The allegations of the cross-bill do, however, bring the case within the second class above mentioned. It is alleged that Leonard Miller was a successful business man but appellant was unacquainted with business matters in general and in such matters placed implicit confidence, reliance and faith in her husband; that her husband solicited her to convey her property to him in order to enable him to borrow money thereon, and promised that he would re-convey to her as soon as the real estate could be freed from the lien of the mortgage; that relying on this promise she made the conveyance without receiving any consideration therefor, and that the heirs of her husband, other than herself, are now claiming that he was at the time of his death the beneficial owner of such property. These allegations show a confidential relation existing between appellant and her husband at and prior to the time of the conveyance by her to him, the position of appellant being one of dependence upon her husband in business transactions, and if proven are sufficient to raise a constructive trust in favor of appellant in one-third of the real estate sought to be partitioned. (*Pope v. Dapray, supra; Stahl v. Stahl,* 214 Ill. 131; *Ward v. Conklin,* 232 id. 553; *Hilt v. Simpson,* 230 id. 170; *Noble v. Noble,* 255 id. 629.) The heirs of Leonard Miller will not now be permitted to refuse to fulfill his promise if the same be proven as alleged, and thus betray the confidence which his wife reposed in him and which induced her to make the conveyance.

The demurrer to the cross-bill should have been overruled.

The second and third questions presented may be considered together, as appellant concedes she would be entitled to credit for interest payments only in the event that it be held that the real estate, under the allegations of the cross-bill, should exonerate the personal estate from the payment

of the mortgage indebtedness. It is alleged that to induce her to make the conveyance Miller represented to appellant that, as he understood the law, should he die intestate and childless she would inherit his entire personal estate, and that as between her and his next of kin the mortgage with which he contemplated encumbering the real estate would be charged to the real estate in preference to the personal estate, and that appellant relied upon this representation, among others, in making the conveyance. Appellant asks for relief in this particular apparently on the theory that her husband agreed with her that if she would make the conveyance and he should die intestate before the payment of the mortgage indebtedness she would inherit all his personal estate, exonerated, as between her and his heirs, from the burden of paying this indebtedness. Assuming that the allegations of the cross-bill amount to such an agreement, equity does not raise constructive trusts for the purpose of enforcing contracts. No matter what inducements were offered her to make the conveyance, appellant will have secured all the relief to which she is entitled under the allegations of her cross-bill if the court raises a constructive trust and she thereby secures the return of her real estate. The fact that such representations were made would be proper proof under the relations alleged to have existed between appellant and her husband to show the inducements offered to secure the conveyance, but these allegations fall far short of showing such a situation as would bring the property of an intestate without the scope of the laws of descent, and are not sufficient to support a prayer for affirmative and independent relief. Under the allegations of the cross-bill appellant would not be entitled to credit for the interest payments, as no ground is disclosed· for charging the real estate as the primary fund for the payment of the mortgage indebtedness.

The court erred in decreeing that appellant should be credited on the accounting with the amount of $815, which

it was shown Thomas G. Miller owed Leonard Miller at the time of his death. The condition of the estate of Thomas G. Miller was not shown. His administrator was not made a party to the suit, and it was not shown that appellant, as administratrix of her husband's estate, had ever presented her claim against the estate of Thomas G. Miller and had the same reduced to judgment. No such privity between appellees and the estate of Thomas G. Miller was shown as would entitle appellant to such an accounting in any event.

For the reasons indicated the decree of the circuit court is reversed and the cause remanded, with directions to overrule the demurrer to the cross-bill, and for further proceedings not inconsistent with the views herein expressed.

*Reversed and remanded, with directions.*