ARTHUR LEE MILLER *et al.* Appellants, *vs.* BERNICE MAY-FIELD MILLER, Appellee.

*Opinion filed April 20, 1916.*

1. TRUSTS—*rule as to proof required to establish a constructive trust.* A constructive trust must be established by clear, unmistakable and convincing evidence; but the sufficiency of the proof required does not depend upon the number of witnesses testifying to the facts alleged in the bill, and the testimony of one witness, if clear and convincing, may be sufficient.

2. SAME—*what proof sufficient to establish a constructive trust.* Proof that a wife, having an undivided interest in land as a tenant in common with her brothers, refused to sign a deed of the land to her husband unless she was paid for her interest, and that the husband, in order to gain her consent and obtain the whole title, agreed that if she would sign the deed he would erect a building and convey to her a one-third interest in the premises, is sufficient to establish a constructive trust, where there is also evidence that after the wife had signed the deed the husband made the statement that his wife thought she had made some agreement with him for her protection.

APPEAL from the Circuit Court of Logan county; the Hon. T. M. HARRIS, Judge, presiding.

C. EVERETT SMITH, and THOMAS D. MASTERS, for appellants.

C. C. LEFORGEE, and McCORMICK & MURPHY, (PHILIP L. MILLER, of counsel,) for appellee.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

This is the second appeal in this case to this court. The original amended bill prayed for partition of certain property in the city of Lincoln, Logan county. Leonard Miller was seized and possessed of the property sought to be partitioned at the time of his death, intestate, April 17, 1913. The property described in the bill consisted of parts of two lots in the city of Lincoln, upon which was a three-story building. The first floor was occupied by Miller for a general store. The upper stories were offices and residence apartments. At the time of his death Miller and his wife occupied apartments in the building as their home. Miller left no children nor survivors of children, but left a widow, Bernice Mayfield Miller, and complainants in the original bill, his mother and brother, as his next of kin and only heirs. The bill alleged that Miller was the sole owner in fee of the premises sought to be partitioned, and that upon his death his widow became the owner of the undivided one-half thereof and entitled to dower and homestead rights in the other one-half, and that the complainants, his mother and brother, became the owners of the undivided one-half of said premises subject to the dower and homestead rights of the widow, the interest of the mother being the undivided two-thirds of one-half and that of the brother one-third of one-half of said premises. The widow, Bernice Mayfield Miller, answered the bill and also filed a cross-bill, the allegations of which are fully set out in the opinion delivered in the case when it was before us on the former appeal and need not be here repeated. The cross-bill prayed

that cross-complainant be decreed to be the equitable owner of the undivided one-third of said premises free from any claim of complainants in the original bill and that they be decreed to execute conveyances to her therefor. The circuit court sustained a demurrer to the cross-bill, dismissed it for the want of equity and decreed the ownership of the premises to be as alleged in the original bill. The cross-complainant appealed from that decree to this court, and on the appeal it was attempted to sustain the decree of the court in sustaining the demurrer to and dismissing the cross-bill, on the ground that the trust set up in it was an express trust, and not being manifested by any writing signed by Leonard Miller, could not be enforced. Cross-complainant contended that the cross-bill set up a constructive trust, which was not required to be manifested by a writing, and the circuit court therefore erred in sustaining the demurrer to and dismissing the cross-bill. We held the facts alleged in the cross-bill, if proven, were sufficient to raise a constructive trust in favor of cross-complainant to one-third of the property sought to be partitioned. We therefore reversed the decree of the circuit court and remanded the cause, with directions to overrule the demurrer to the cross-bill and for further proceedings consistent with the views of this court expressed in its opinion. (*Miller v. Miller,* 266 Ill. 522.) Both the original and cross-bills prayed other relief than partition, but those questions are not involved in this appeal. Upon the cause being reinstated in the circuit court the demurrer to the cross-bill was overruled, and after answer to it by complainants in the original bill the cause was referred to the master in chancery, who heard the evidence and reported it, together with his conclusions of law therefrom. The master reported his conclusion from the evidence to be, that it was not sufficient to sustain the allegations of the cross-bill and was not sufficient to raise a constructive trust in favor of Bernice Mayfield Miller as to one-third of the premises, and he

recommended that the cross-bill be dismissed. The chancellor sustained exceptions to the conclusion and recommendation of the master and entered a decree that the evidence sustained the allegations of the cross-bill, and adjudging the cross-complainant to be the equitable owner, before and at the time of her husband's death, of the undivided one-third of the premises, the title to which was held in trust for her by her husband, and that complainants had no interest in said one-third. On the basis that cross-complainant was the sole owner of the undivided one-third of said premises at the time of her husband's death and the complainants in the original bill were interested only in the undivided two-thirds, subject to the homestead and dower rights of the widow, the court decreed a partition. Complainants in the original bill have prosecuted this appeal from that decree.

It would be inappropriate on this appeal to enter upon a discussion of what state of facts is necessary to raise a constructive trust. It was decided in our former decision that the cross-bill alleged facts which, if proved, would raise a constructive trust, and the question now presented for our decision is, did the chancellor err in holding and decreeing that the proof was sufficient to sustain the allegations of the cross-bill?

To support the cross-bill, which alleged facts sufficient, if proven, to raise a constructive trust, appellee introduced the testimony of two witnesses. Fred S. Mayfield, a brother of appellee, testified that he, another brother and appellee were formerly owners of the property as tenants in common. In 1905 Leonard Miller told witness he wanted to change the location of his store and inquired what the property in controversy could be purchased for. Witness priced it at $7500. Miller said he would see him again and asked the witness to say nothing about it. Shortly afterwards Miller called to see the witness again, said he had talked with the appellee (his wife) about it, and had asked her to waive payment for her interest. He said he could pay the

brothers for their two-thirds interest, but that if he had to pay his wife it would cramp him so that he would have to borrow money. Miller said appellee had refused to make the conveyance without payment for her interest. The witness testified he was anxious to make the sale as the property was producing no income, and he proposed to Miller that he would go and see appellee, and Miller said he wished he would do so. The witness saw appellee and talked the matter over with her, but she refused to join in the conveyance without the payment to her for her interest. The witness reported this to Miller, who said he was sorry; that he wanted the property but guessed he would have to give it up. Witness was anxious to make the sale, and he went again, the same day, to see appellee and talk the matter over with her, but she again refused to sign the deed unless she was paid for her interest. At a later date Miller called on the witness and said he was disappointed; that the location of the property suited him better than any other place, and that if witness could persuade appellee to sign the deed without him paying her for her interest he would erect a building on the property and after it was completed he would convey appellee a one-third interest in it. Witness promised to and did at once go and see appellee about making the deed. She still objected to doing so without being paid. Witness told appellee it was a disappointment to him that the deal could not go through as he had counted on its doing and told her the proposition Miller had made,—that if she would sign the deed without pay for her interest he would re-convey her a one-third interest in the property. The witness told her it was a good proposition and she ought to do it; that her husband was a successful business man, and that he (witness) would guarantee Miller would fulfill his promise. The witness admitted the interest he took in the matter was influenced by his desire to sell his own interest in the property. Appellee finally agreed to join in the deed and the witness so reported to her husband.

He testified Miller was much delighted and reiterated his promise to convey to the appellee one-third of the property when the building was completed with the money he proposed to borrow on the property. Miller had a deed prepared, which was signed by all the parties, and the witness and his brother were paid by Miller $2500 each. No consideration was paid appellee other than the promise made by Miller.

J. E. Hoblit, cashier of a bank in Lincoln of which Leonard Miller was a customer, testified that after the construction of the building on the premises had been commenced, somewhere about the year 1908,—the witness was not certain just when,—Miller was in the bank one day talking over his business with the witness and stated that when appellee deeded her property she thought there was some arrangement or agreement between them. The witness could not remember the language used but it was something to the effect stated, and the impression made upon the witness' mind by what Miller said, was that Miller thought he had "put one over" on appellee.

On behalf of appellants, Cora Sarver Harper testified 'that in the spring of 1911 she was employed by appellee as a nurse and remained with her about nine weeks. She testified she had several conversations with appellee about her property rights but she only remembered a few sentences. She testified appellee said when she and Miller were first married she gave him her property unconditionally. That was all she said she could remember on the subject.

Mrs. Elizabeth Weems testified she attended appellee as nurse one week in March, 1911; that they had a conversation about appellee having conveyed her property to her husband and how her husband treated her; that witness advised appellee to leave her husband, and that appellee said she had given all her property over to him and that if she left him she could not get anything; that she had been so advised by her relatives.

H. C. Knapp was called as an impeaching witness of the testimony of Fred S. Mayfield. He testified that in 1911 he had a conversation with Mayfield at a time when the latter had just received a letter from appellee, and Mayfield said, in substance, Miller had not treated appellee right; that he had taken title to her undivided interest in the Lincoln property and had agreed to pay her what it was worth but had not done so or given her any note or evidence of indebtedness. Mayfield said he had been instrumental in procuring his sister to sign the deed, and the witness said Mayfield was very angry and said that Miller agreed to give appellee a deed or mortgage or contract, or something of the kind,—the witness could not remember which it was but that appellee was to have been secured.

Arthur Lee Miller, one of appellants and a complainant in the original bill, testified that on April 23, 1913, he had a conversation with appellee for the purpose of trying to arrive at an amicable settlement, and in that conversation appellee asked the witness "how about the $2500 that is due as my share of the estate or the original lot," or that in substance, and that the next statement she made was that she did not care to talk further with him; that he would have to talk with her attorneys.

Appellee was called in rebuttal and denied she ever told the witness Harper that she had conveyed her property unconditionally to her husband. She testified that what she told the witness was, that she had conveyed the property to her husband on condition. Appellee flatly denied that she ever made the statement about the $2500 coming to her, testified to by Arthur Lee Miller, or anything, in substance, to that effect. She testified Miller spoke to her once about having some interest in the property, and that she told him she did not care to discuss the subject but would leave it to their attorneys.

This is the substance of all the testimony offered on the question here for consideration. It is clearly shown that

Leonard Miller was very anxious to secure a full and complete title in himself to the property. The buildings on the premises were then unsuitable for business purposes and were of little value. He desired to erect a three-story building on the property and to mortgage it for the money to pay for the building. He was willing to take the property at the price of $7500 but claimed it would embarrass him to pay the consideration in full. He sought to induce his wife to join in the deed with her brothers without his paying her anything for her interest. Upon her declining to do so he reported the fact to his wife's brother, Fred S. Mayfield, who being anxious to sell his interest and get the money for it, volunteered to try and influence his sister (appellee) to sign the deed without receiving payment. His offer to do this was agreeable to Miller, who said he would be glad to have Mayfield do so. Miller had not authorized Mayfield, at the time Mayfield had the first two conferences with appellee, to make her any definite or specific promise to induce her to sign the deed. After she had refused the second time to sign it and the sale had apparently fallen through, Miller told Mayfield if he would persuade appellee to sign the deed he would promise and agree that when the building he proposed to erect on the property was completed he would convey her a one-third interest in the premises. Through the influence of this promise and the persuasion of her brother, who was acting at the request and on behalf of appellee's husband, she agreed to and did sign the deed. Mayfield testified that upon his informing Miller appellee had consented to sign the deed he expressed himself as delighted and reiterated his promise and intention to convey her a one-third interest in the property when the building was completed.

If there were no other proof in the record except the testimony of Fred S. Mayfield it could not be denied that the facts alleged in the cross-bill as establishing a constructive trust in appellee were proven by the testimony. The

testimony of the witness Hoblit as to the statement made
to him by Leonard Miller, but not the impression made on
his mind by the statement, has an important bearing in cor-
roboration of the testimony of Mayfield. While the witness
could not remember the language used by Miller, he does
remember that it was to the effect that appellee had thought
there was some arrangement or agreement for her protec-
tion when she made the conveyance. We think, also, the
testimony of Knapp supports, rather than impeaches, the
testimony of Mayfield. The evidence to overcome the proof
supporting the allegations of the cross-bill is the testimony
of witnesses Harper, Weems and appellant Arthur Lee Mil-
ler. The testimony of two of them is contradicted by ap-
pellee, but a consideration of their evidence fails to impress
us that it seriously affects or impairs the value, force and
effect of the testimony to support the cross-bill. That the
allegations, if proven, are sufficient to establish a construc-
tive trust in appellee is *res judicata* by our former decision.
It is true, we have repeatedly held that to transfer title to
real estate by parol testimony, alone, the facts relied upon
must be established by clear, strong, unequivocal and unmis-
takable evidence, but we are unable to say that the chancel-
lor erred in holding and decreeing that the evidence in this
case met these requirements. The sufficiency of proof re-
quired to establish a constructive trust does not necessarily
depend upon the number of witnesses testifying to the facts
alleged and relied upon. If the testimony of one witness
is clear and convincing it may be sufficient. (*Larmon* v.
*Knight,* 140 Ill. 232; *Stahl* v. *Stahl,* 214 id. 131; *Wolford*
v. *Herrington,* 74 Pa. St. 311.) While the evidence offered
by appellants tends in a measure to contradict the claim of
appellee as to the circumstances, terms and conditions of
the conveyance to her husband, it is not of a character to
raise a reasonable doubt of the reliability of appellee's tes-
timony, which bears inherent evidence of its truth. There

is that in the circumstances surrounding the transaction and the conduct of the parties in connection with it, so fortifying and strengthening the testimony of appellee's witnesses that we have no reasonable doubt of its substantial truth.

It is contended by appellants that the allegation of the cross-bill that appellee placed confidence in and relied upon the good faith of her husband in keeping his promise is not sustained by the proof; that she made the conveyance through the influence and upon the representation of her brother, Fred S. Mayfield. The facts which we have above set out rather fully in substance are a sufficient answer to this contention. But it is also contended that the relations between appellee and her husband were not amicable and the trust and confidence usually existing between husband and wife did not exist in their case. At the time the deed was made the parties had been married about two years, and there is no proof that at that time their relations were not pleasant and agreeable. There was proof that some five or six years after that time they were not living very happily together. It clearly appears that appellee was not willing to part with her property without being paid for it, and we cannot suppose that she would have conveyed it to anyone upon the terms and conditions she did convey it except a husband in whom she imposed trust and confidence. Without regard to whether she was inexperienced in business affairs and whether her husband was a successful business man, the proof sustains the allegations of the cross-bill as to the terms and conditions upon which she made the conveyance to her husband, and the chancellor did not err in so holding and decreeing.

The decree of the circuit court is affirmed.

*Decree affirmed.*