(No. 30357.—

FLOSSIE L. STEIN, Appellant, *vs.* ORVIL K. STEIN *et al.*—
(ORVIL K. STEIN, Appellee.)

*Opinion filed November 20, 1947.*

J. D. WILSON, of Nokomis, for appellant.

CARL H. PREIHS, of Pana, and J. C. WILLARD, of Shelbyville, for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

Appellant, Flossie L. Stein, and appellee, Orvil K. Stein, are husband and wife. The question they bring here is which of them is entitled to a 200-acre farm in Christian County belonging, in his lifetime, to Frank P. Stein, father of Orvil K. Stein, and willed by him to Flossie L. Stein.

The cause arose through a bill to partition a certain other 40-acre farm held in the names of Flossie L. Stein and Orvil K. Stein. This bill for partition was filed in the circuit court of Christian County by the appellant, Flossie L. Stein. Her husband, Orvil K. Stein, was made party defendant and answered, and in addition filed a verified counterclaim claiming that the 200-acre tract in reality belonged to him; that his father had willed it to Flossie on her promise that after certain of Orvil's debts were paid she would transfer the farm to him. In the purchase of the 40-acre tract, a mortgage was given by these parties covering that tract and a portion of the 200-acre tract involved here. The mortgagee, Equitable Life Insurance Company of Iowa, was made a party to these proceedings. As no issues arise on the proceedings partitioning the 40-acre tract, no further reference need be made to that matter.

The counterclaim sets out that shortly before the death of the father of Orvil K. Stein, he called a family conference to determine what he should do regarding the disposition of the 200-acre farm, and also a farm in Nebraska later deeded by the parties to this proceeding to one Lee Stein, a brother of Orvil. The counterclaim charges that at these conferences Flossie fraudulently suggested that because of debts which she declared Orvil owed, the land should be willed to her, and that after the debts were paid she would deed the property back to Orvil, but that

after the death of Orvil's father she refused to reconvey the property, and that by reason of her fraudulent promises in this behalf a trust arose. The prayer of the cross complaint was that Flossie be declared trustee for Orvil and that Orvil be declared to be the owner in fee of the 200 acres of land.

Flossie L. Stein filed a verified answer denying any promise on her part to hold the property for Orvil and denying all manner of fraud charged. On hearing, the chancellor found the issues for Orvil, found that a trust was impressed upon the real estate "by agreement between Flossie L. Stein and her husband Orvil K. Stein, and the testator Frank P. Stein, deceased," and found that that trust had long since expired and that in equity Flossie should, by reason of the trust, convey the property to Orvil K. Stein as beneficiary and *cestui que trust* of the said trust. The chancellor, quoting almost verbatim the counterclaim, found numerous facts to exist, concerning which no evidence whatever was given, and which facts were denied by the verified answer of Flossie L. Stein. A question arising here is whether, assuming that a trust was proved, it was a constructive trust or an express trust.

The evidence of the counterclaimant, Orvil K. Stein, and his witnesses, is that Flossie made the suggestion that the property be willed to her and promised that when the debts were paid the property would be returned to Orvil. This is the only evidence of fraud. The record shows without dispute that these people lived together, worked this land together, and the entire family lived off of the income thereof from the time of the death of Frank P. Stein up to the time of the bringing of this suit. It appears from the evidence that Orvil frequently importuned his wife to transfer the property to him and that conferences were had with their counsel to that end. In one of these conferences Flossie agreed to deed the property in joint tenancy to the two of them but it appears that Orvil refused to go through

with the matter because he insisted that his name should appear first in the deed, and that he left the conference.

The only evidence of fraud lies in the statements of counterclaimant and his witnesses that Flossie agreed to redeed the property as soon as Orvil's debts were paid. They do not say that either he or his father was misled as to any fact which governed the transaction. The attorney who wrote the will testified that he went to the farm and found Frank P. Stein, the father, Orvil and Flossie and one or two other persons at the house. He had not met Flossie before that time and she, as soon as he was introduced to her, left the room. He testified that nothing was said either by Flossie or anyone else there, concerning a promise on the part of Flossie to return the property to Orvil after the latter's debts were paid. He was told by the testator how the will was to be drawn and drew it accordingly.

There is no basis in the evidence for the claim of fiduciary relationship existing between Frank P. Stein, Orvil's father, and Flossie. The evidence all indicates that the senior Stein was a man of strong will and clear mind, who had assisted in piloting his son through his unfortunate business ventures by reason of which the son had been required to go through bankruptcy, and who was genuinely concerned that the title to the property be so vested that it would not be dissipated. So there is here purely the question whether the facts, as they exist, amount to proof of a trust, and, if so, the character thereof.

Trusts are either express, constructive or resulting trusts. It is conceded that if this be a trust at all, it is not a resulting trust, and appellee concedes that if it be an express trust, it is void because it was not reduced to writing, in accordance with the requirements of the Statute of Frauds. Appellee's counsel argue that it is a constructive trust because, they say, the transaction is tainted with fraud. It is conceded that a constructive trust does not come within

the provisions of section 9 of the Statute of Frauds. Ill. Rev. Stat. 1945, chap. 59, par. 9; *McDonnell* v. *Holden,* 352 Ill. 362.

Counsel for appellee argue that the evidence in this case shows that a constructive trust arose by proof of the statement contained in the counterclaim that the appellant "continued to impress upon his [Orvil's] father that he, this defendant, was still liable for payment of many debts after the bankruptcy proceedings; that this defendant, ignorant of the law, was unadvised of his liability after said bankruptcy proceedings." This, they say, coupled with the promise of appellant to reconvey the property to appellee, after the payment of his debts, gives rise to a constructive trust. There is no allegation in the counterclaim that Frank P. Stein, father of Orvil, relied in any way upon the statements alleged to have been made by appellant or was induced by such statements, if such were made, to make his will. There is no allegation to the effect that Frank P. Stein did not know the law in relation to his son's liability after such bankruptcy proceedings, nor that he was in any way induced or affected by such statements. Nor is there an allegation of any facts showing a confidential relation between appellant and the testator. Appellee did not claim on the hearing that he placed any reliance on any statements alleged to have been made by appellant but, on the contrary, his testimony is that when his wife stated that he had many debts, he asked her to name them, and that she did not do so and gave him no further answer.

It is a rule uniformly recognized that a constructive trust cannot be established by merely showing that one who has obtained the legal title for a specified purpose, upon an oral promise to convey to a third person, refuses to perform such promise or denies the existence of the trust. (*Miller* v. *Miller,* 266 Ill. 522.) It is also an often-recognized rule, as was announced in *Allen* v. *Jackson,*

122 Ill. 567, that where "a person obtains the legal title to property by virtue of a confidential relation and influence, under such circumstances that he ought not, according to the rules of equity and good conscience as administered in chancery, to hold and enjoy the beneficial interests of the property, courts of equity, in order to administer complete justice between the parties, will raise a trust, by construction, out of such circumstances or relations."

In *Pope* v. *Dapray,* 176 Ill. 478, one of two elements is held necessary to form the basis of, or to establish, a constructive trust. "There must be some element of fraud, either positive or constructive, which existed at the time of the transaction which influenced the *cestui que trust,* or there must exist a confidential relation and influence, by virtue of which one has obtained the legal title to property which he ought not, according to the rules of equity and good conscience, to hold and enjoy."

As was pointed out in the case of *Miller* v. *Miller,* 266 Ill. 522, at page 533, "The cases decided by this court involving constructive trusts may therefore be divided into two general classes, one consisting of those cases in which actual fraud is considered as an equitable ground for raising a constructive trust, and the other consisting of those cases in which the existence of a confidential relation and the subsequent abuse of the confidence reposed is considered sufficient to take the case out of the statute." Whenever one procures the making of a gift directly to himself through false and fraudulent assurances that he will carry out a plan of the donor and will apply the gift for the benefit of a third person, and thereafter refuses to carry out the promise, claiming to hold the property as his own, equity will enforce the obligation by impressing a trust on the property in favor of the one who has been defrauded. *Keller* v. *Joseph,* 329 Ill. 148; *Stahl* v. *Stahl,* 214 Ill. 131.

It is also the rule that a mere denial by the holder of the legal title that a trust exists, or an oral refusal to carry

out a verbal promise, does not constitute such fraud as takes the case out of the statute. (*Keller* v. *Joseph,* 329 Ill. 148; *Lantry* v. *Lantry,* 51 Ill. 458.) In order to raise a *trust ex malificio* there must be an element of positive fraud in the transaction. *Davis* v. *Stambaugh,* 163 Ill. 557; *Roche* v. *Roche,* 286 Ill. 336; *Streeter* v. *Gamble,* 298 Ill. 332.

Where it is sought to establish a constructive trust by parol testimony, the proof must be clear and convincing and so strong and unequivocal as to lead only to that conclusion. If the evidence is doubtful or capable of reasonable explanation upon theories other than the existence of a trust, it is not sufficient to support a decree declaring and enforcing a trust. *Winkelman* v. *Winkelman,* 307 Ill. 249.

The evidence of appellee consisted of testimony of himself, an uncle, P. G. Stein, and one Andrew Buckner. The last-named witness testified that some time after the death of the testator he had a conversation with appellant in which she told him that when all the debts were paid up and the bankruptcy concluded, she would turn the place back to Orvil.

Orvil testified that she had stated that she would pay his debts and convey all of the land to him. P. G. Stein testified that she had stated at the family conference that she would return to Orvil all of the land but the Nebraska land which was deeded to Lee Stein. Lee Stein is shown not to have had any debts and no reason appears why he could not have taken a conveyance from his father. There is no testimony in the record that Orvil had any debts not discharged by bankruptcy except one debt of about $260.

The testimony of Buckner related to a time after the death of the testator and, if true, may be accounted for as a voluntary statement by appellant of a then intention regarding the land, but can scarcely be said to be proof that the land was willed to her on her promise to reconvey to Orvil. It is evident from the record that the testator knew that his son Orvil had been in financial difficulties

and that he was in debt at the time the will was made, as Orvil admitted the judgment against him for something around $260.

These parties are married and have two children and it is entirely consistent with the proof that the father, when he gave the property to Orvil's wife "absolutely," considered that that was the best way to preserve it for the children.

The attorney who drew the will testified that he discussed the making of the will in the presence of the appellee, and the testator said he wanted to leave the property to his daughter-in-law, the appellant. He testified that appellant was not present when the will was executed. It would seem but natural that if it was the father's understanding that she was to return this property to Orvil after the debts were paid, such an understanding would have been mentioned. These facts, together with the further fact that these people lived together, farmed these premises together, the entire family living on the proceeds of the farm, from the spring of 1939 until the bringing of this suit, strongly indicate that the proof upon which the claim of a constructive trust rests is not of that satisfactory character required to establish such a trust. True, in the later years he frequently importuned her to transfer the property to him, and she apparently, as a result of such importunities, agreed, in the office of their counsel, to execute conveyances of this property to both of them as joint tenants, which however was not done because of their failure to agree as to whose name should appear first in the deed.

We are not unmindful of the fact that the chancellor has found the issues for the appellee, but we are convinced that the proof does not sustain the claim that this alleged agreement should be taken out of the Statute of Frauds. The decree of the circuit court is therefore reversed and the cause is remanded with directions to enter a decree in accordance with the views herein expressed.

*Reversed and remanded, with directions.*