## GUSTAV ADOLPHUS STAHL *et al.*

### *v.*

## JOHN STAHL *et al.*

*Opinion filed February 21, 1905.*

1. TRUSTS—*when equity will raise trust by construction.* Where the legal title to land is conveyed by a mother to a certain son, to be held by him in trust for all the children, the conveyance being without consideration and the result of the confidence reposed in the grantee by the mother and children, a court of equity will not permit him to betray such confidence but will raise a constructive trust in favor of the children, notwithstanding the agreement rests in parol.

2. SAME—*one taking title with notice of a trust takes subject thereto.* One taking title to property with notice that his grantor, in conveying the title to him, is violating the confidence reposed in him by the persons for whose benefit he held the title under a parol trust, will be regarded in equity as a trustee, and the property will be impressed in his hands with the same trust to which it was subject in the hands of his grantor.

APPEAL from the Superior Court of Cook county; the Hon. M. KAVANAGH, Judge, presiding.

This was a bill in chancery filed by the appellants against the appellees in the superior court of Cook county to establish a trust in favor of the children of John G. and Fredericka L. Stahl, deceased, in certain premises located in the city of Chicago, known as No. 15 Blue Island avenue, the legal title to which was in John Stahl. On July 7, 1878, John G. Stahl died intestate, seized in fee simple of said premises, upon which he and his family then resided and which were of the value of about $5000. He was also possessed of personal property of the value of about $100c. He left him surviving as his widow, Fredericka L. Stahl, and Emma O., Robert G. and Louisa F., who were of age, and Frederick W., Frank A., John and Gustav A., who were minors, as his children and sole heirs-at-law. The widow was appointed administratrix of the estate. The estate owed debts to the

amount of about $800. The widow's award was fixed at $2265. She was discharged as administratrix in 1880. Prior to such discharge all of said children conveyed their interests in said premises to their mother, and the minors, upon arriving at age, confirmed such conveyances by making to her new deeds. On the 18th day of August, 1900, Fredericka L. Stahl conveyed said premises, without consideration, to Frank A. Stahl. She died intestate on February 11, 1901, leaving her surviving as her heirs, the children hereinbefore named, and on September 5, 1902, Frank A. Stahl conveyed, without consideration, said premises to his brother John Stahl. Answers and replications were filed and the case was tried in open court, and a decree was entered finding said premises were held by the defendant Frank A. Stahl, after the execution and delivery to him of a warranty deed from Fredericka L. Stahl dated August 18, 1900, under an express trust for the benefit of the children of said Fredericka L. Stahl, and were held in like manner by John Stahl after the execution and delivery of the deed to him on September 5, 1902, by Frank A. Stahl; that said express trust was not manifested or proved by any writing signed by Fredericka L., Frank A. or John Stahl, or either of them, and that the Statute of Frauds having been pleaded by Frank A. and John Stahl, said trust cannot be maintained but by reason of said statute is null and void; whereupon the bill was dismissed for want of equity, and Gustav A. and Louisa F. have prosecuted an appeal to this court and have assigned as error the action of the court in dismissing said bill for want of equity.

MORSE IVES, for appellants:

A confidential or fiduciary relation existed between all the children and their mother, Fredericka L. Stahl, with reference to the property in question, from the time the father died until her death. Their association and interest was such that Frank could not in equity and good conscience ac-

quire an interest as against his brothers and sisters. *Davis* v. *Hamlin,* 108 Ill. 49; *Trice* v. *Comstock,* 121 Fed. Rep. 620.

Frank was his mother's agent in respect to the property, he was her physician, and his relations otherwise with her were those of implicit confidence. He could not take a conveyance from her without the burden of proof resting upon him to show that it was fair and without undue influence. *Thomas* v. *Whitney,* 186 Ill. 225; *Ackley* v. *Croucher,* 203 id. 530; *Dowie* v. *Driscoll,* 203 id. 480; *Mayrand* v. *Mayrand,* 194 id. 45.

At the time of the deed to Frank his mother was sick and expected to die, and her only inquiry was if the instrument presented to her was satisfactory to all her children present. In view of these facts it devolved upon defendants to show that she knew what she signed, and that she did it without undue influence on the part of Frank. *Dorsey* v. *Wolcott,* 173 Ill. 539; *Sands* v. *Sands,* 112 id. 225; *Dowie* v. *Driscoll,* 203 id. 480; *Mayrand* v. *Mayrand,* 194 id. 45.

In feeble health, without any valuable consideration, the mother transferred all her property to Frank, and left herself, in her old age, penniless, with other children having equal claims upon her wholly without recognition. These facts alone create a presumption that the absolute conveyance to Frank was not what it on its face purports to be. *Skahen* v. *Irving,* 206 Ill. 597; *Pool* v. *Phillips,* 167 id. 432.

The circumstances attending the transfer to Frank and to John are such that a constructive trust should be impressed upon the property. *White* v. *Ross,* 160 Ill. 56; *Pope* v. *Dapray,* 176 id. 478.

The retention of the property by Frank and John is not merely constructively fraudulent, but it is pursuant to a scheme of actual deceit. *Oard* v. *Oard,* 59 Ill. 46; *Towle* v. *Ambs,* 123 id. 410; *Larmon* v. *Knight,* 140 id. 232; *Jones* v. *Neeley,* 72 id. 449; *Gruhn* v. *Richardson,* 128 id. 178; *Ahrens* v. *Jones,* 169 N. Y. 555; *Wolford* v. *Herrington,* 74 Pa. St. 311.

JOHN F. HAAS, for appellees:

This is an attempt to create an express trust by parol, which is void under the Statute of Frauds. *Benson* v. *Dempster,* 183 Ill. 297; *Biggins* v. *Biggins;* 133 id. 211; *Lantry* v. *Lantry,* 51 id. 458.

Complainants cannot show by parol evidence that the deed absolute in form was a conveyance in trust, when the Statute of Frauds is interposed. *Lawson* v. *Lawson,* 117 Ill. 98.

An express trust between the grantor and grantee of land, where the grantee is to hold the land in trust for the grantor or is to re-convey to him on a certain contingency, is invalid under the Statute of Frauds, unless evidenced by some writing signed by the grantee. *Stevenson* v. *Crapnell,* 114 Ill. 19; *Biggins* v. *Biggins,* 133 id. 211.

The mere refusal on the part of a grantee to re-convey to the grantor in violation of a parol agreement is not such fraud as takes the case out of the Statute of Frauds and authorizes a court of equity to lend its aid in enforcing the trust. *Williams* v. *Williams,* 180 Ill. 361.

Whatever hardship may result from the enforcement of the provisions of the Statute of Frauds that an express parol trust is void, the rule is too well settled and too firmly founded in wise public policy to be frittered away by the courts. Parties must take the trouble, in case they desire to establish such a trust, to embody it in writing, as the statute requires. *Williams* v. *Williams,* 180 Ill. 367.

Where there is an express trust there cannot be a resulting trust. *Benson* v. *Dempster,* 183 Ill. 297.

Mr. JUSTICE HAND delivered the opinion of the court:

The appellees averred in their answer that the deed bearing date August 18, 1900, executed by Fredericka L. Stahl to Frank A. Stahl, and the deed bearing date September 5, 1902, executed by Frank A. Stahl to John Stahl, were

absolute deeds of conveyance. It is apparent from the evidence that John Stahl took title to said premises with notice of the manner in which Frank A. Stahl obtained title thereto from Fredericka L. Stahl, and that said premises are impressed in his hands with the same trust, if any, which was impressed thereon when the title thereto vested in Frank A. Stahl by virtue of the deed from his mother. The controlling question, therefore, in this case is, did Frank A. Stahl, at the time he conveyed said premises to John Stahl, hold the title thereto in trust for the benefit of the children of Fredericka L. Stahl, and if he did, is such trust of that character that it can be enforced in a court of equity against Frank A. Stahl and John Stahl in favor of the children of Fredericka L. Stahl, deceased?

At the time Fredericka L. Stahl executed said deed to Frank A. Stahl she was seventy-two years of age and was sick in bed. The scrivener who prepared the deed was called by her grandson to her house at eleven o'clock at night. The deed was executed by her at about twelve o'clock of the same night. All her children, five in number, in the city of Chicago were assembled at her house. The premises conveyed were then of the value of about $25,000,—all the property she had. At that time Frank A. Stahl was a practicing physician in the city of Chicago and earning from $3000 to $4000 per year. The relations existing between Fredericka L. and all her children, including Frank A., were friendly and confidential. No consideration was paid to her by Frank A. Stahl for the conveyance, and the premises were subsequently conveyed to John Stahl by Frank A. Stahl without consideration. Frank A. Stahl, after the death of his mother, and John, after the conveyance to him by Frank A., both admitted that their brothers and sisters were equally interested with them in said premises. Such admissions were denied by them upon the trial. Louisa F., who was present on the night of the 18th of August, when the deed from Fredericka L. to Frank A. was executed, testified that her mother

was sick in bed; that her brothers and sisters in the city of Chicago were at her bedside, as it was thought she was about to die; that the children talked the matter over, and it was agreed it was advisable to have the mother make a deed to said premises so that they could be divided without expense after her death; that it was first talked of having the same conveyed to her sister; that it was finally agreed to have them conveyed to Frank A., and that each child was to have a paper from him showing the interest of each therein; that they sent for a lawyer, who came about midnight; that he prepared a deed; that they then aroused their mother and explained to her that she might not get well and they thought it best that she execute some papers; that she said to her children, "Is it your wish to have this paper made?" and they said, "Yes," whereupon she was held up in the bed and signed the deed. The other children, four in number, the lawyer who prepared the deed and the grandson, who were present, admitted that Fredericka L. Stahl was sick; that she was in bed; that the lawyer was sent for in the middle of the night; that the deed was executed about midnight; that some of the children stayed up in the house all night; that no consideration was paid for the conveyance; that they knew no reason why the deed was made to Frank A. and that there was no reason for its execution at that time, but testified Fredericka L. was not very sick; that her mind was clear; that she said she wanted to convey all of her property absolutely to Frank A.; that nothing was said at that time about Frank A. holding the property in trust for the benefit of himself and her other children, and that the conveyance was an absolute conveyance to Frank A.

The chancellor saw and heard the witnesses testify, and evidently, from the decree entered by him, did not adopt the view of the witnesses for appellees who testified to what took place and what was said at the time of the execution of the deed, but did adopt the view of Louisa F., as he found in the decree that at the time the deed was executed and delivered

to Frank A. there was an express parol trust agreement that
Frank A. was to hold the title to said property for the bene-
fit of all the children of Fredericka L. We have read the
evidence of all the persons who were present at the time of
the execution of the deed to Frank A., who testified upon
the trial, and are of the opinion the chancellor was fully jus-
tified in giving credence to the testimony of Louisa F. in-
stead of to the testimony of the other witnesses who testified
as to what was said and what took place at the time the deed
was executed. The question for decision, therefore, is nar-
rowed to whether the facts as proven show the creation of
such a trust at the time of the execution of the deed to Frank
A. as a court of equity can enforce in favor of the children
of Fredericka L. deceased.

The Statute of Frauds, requiring an express trust in
regard to lands to be evidenced by writing, reads as follows:
"All declarations or creations of trusts or confidences of any
lands, tenements or hereditaments, shall be manifested and
proved by some writing signed by the party who is by law
enabled to declare such trust, or by his last will in writing;
or else they shall be utterly void and of no effect: *Provided,*
that resulting trust or trusts created by construction, impli-
cation or operation of law, need not be in writing, and the
same may be proved by parol." (Hurd's Stat. 1903, chap.
59, sec. 9, p. 996.)

In *Pope* v. *Dapray,* 176 Ill. 478, on page 484, it was said:
"A constructive trust is one that arises where a person clothed
with some fiduciary character, by fraud or otherwise gains
something for himself.—Perry on Trusts, sec. 27; *Reed* v.
*Reed,* 135 Ill. 482."

In *Mayrand* v. *Mayrand,* 194 Ill. 45, on page 48, the fol-
lowing statement from *Thomas* v. *Whitney,* 186 Ill. 225, de-
fining the meaning of the term "fiduciary and confidential
relation," as used in this connection, was quoted with ap-
proval. It was there said: "There is a well defined distinc-
tion between undue influence arising from acts which the

law deems fraudulent, and undue influence resulting from
fiduciary relations existing between the parties. * * *
'The term 'fiduciary or confidential relation,' as used in this
connection, is a very, broad one. It has been said that it ex-
ists, and that relief is granted, in all cases in which influence
has been acquired and abused,—in which confidence has
been reposed and betrayed. The origin of the confidence
and the source of the influence are immaterial. The rule
embraces both technical fiduciary relations and those infor-
mal relations which exist whenever one man trusts in and
relies upon another. The only question is, does such a rela-
tion in fact exist?' * * * 'Unless the party claiming the
benefit of the contract shows, by clear and convincing proof,
that he acted with perfect good faith and did not abuse or
betray the confidence reposed in him, * * * the presump-
tion of fraud will require strong evidence to remove it.' "

Frank A. Stahl was a man of mature years, a practicing
physician, and had the confidence of his mother and brothers
and sisters to a marked degree. His mother was old and
sick in bed. His brothers and sisters had been called to her
bedside, and in the night time a lawyer was sent for to pre-
pare papers for her to sign relative to a disposition of her
property. Her children, after consultation, agreed a deed
should be made by her to said son conveying to him property
worth $25,000, which he agreed to hold for the benefit of
himself and his brothers and sisters, the object thereof being
to save the expense of probating his mother's estate and di-
viding her real property through the courts. It is apparent
but for the confidence reposed in Frank A. by his mother
and brothers and sisters the title to said premises would not
have been conveyed to him. After the title was thus ob-
tained by him, to permit him to hold said premises free from
the claims of his brothers and sisters is so opposed to equity
and good conscience that a court of equity, in order to ad-
minister complete justice between the parties, will raise a
trust, by construction, in favor of the brothers and sisters

and against Frank A. in said property, and require him, and his grantee with notice, to execute the same.

In *Dowie* v. *Driscoll,* 203 Ill. 480, on page 490, it was said: "The doctrine repeatedly announced by this court is, that courts of equity 'will scrutinize with the most jealous vigilance' transactions between parties occupying fiduciary relations toward each other, (*Casey* v. *Casey,* 14 Ill. 112,) and that the burden of proof is on the beneficiary, in such cases, to establish the fairness of the transaction and that it did not proceed from undue influence." In this case Frank A. Stahl failed to explain in a satisfactory manner why his mother conveyed to him all her property without consideration, why his brothers and sisters stood by and assented to such transfer, and why he, without consideration, transferred said property to his brother John, if he was the absolute owner thereof at the time he transferred the same to him.

In *Pope* v. *Dapray, supra,* on page 484, it was said: "Where 'a person obtains the legal title to property by virtue of a confidential relation and influence, under such circumstances that he ought not, according to the rule of equity and good conscience as administered in chancery, to hold and enjoy the beneficial interests of the property, courts of equity, in order to administer complete justice between the parties, will raise a trust, by construction, out of such circumstances or relations, and this trust they will fasten upon the conscience of the offending party and will convert him into a trustee of the legal title, and order him to hold it, or execute the trust in such manner as to protect the rights of the defrauded party and promote the safety and interests of society.' (Perry on Trusts, sec. 166.) This rule has been by this court quoted with approval in the cases of *Beach* v. *Dyer,* 93 Ill. 295, and *Allen* v. *Jackson,* 122 id. 567."

In *Larmon* v. *Knight,* 140 Ill. 232, on page 236, it was held, whenever a person acquires the legal title to land or other property by means of an intentionally false and fraudulent verbal promise to hold the same for a certain specified

purpose,—as, for example, a promise to convey the land to a designated individual, to re-convey it to the grantor, or the like,—and, having thus fraudulently obtained the title, he retains, uses and claims the property as absolutely his own, the whole transaction by means of which the ownership is obtained will be treated, in equity, as a scheme of actual deceit, and in such state of case a court of equity will treat the person so acquiring the legal title as a trustee and decree him to hold the title for the benefit of the true beneficiary, and that parol evidence is admissible to establish such trust, as it arises *ex maleficio,* notwithstanding the plea of the Statute of Frauds.

And in *Ahrens* v. *Jones,* 169 N. Y. 555, (62 N. E. Rep. 666,) where the wife obtained a deed from her husband by a promise to pay out of the property deeded, $1000 to each of his two grandchildren, and afterwards refused to carry out the promise, the court said: "This is an attempt to perpetrate a fraud not only upon her husband, who was induced to make the gift to her by reason of her promise, but also upon the plaintiff, who, presumably, would have been otherwise provided for by her grandfather had it not been for the defendant's promise." It was also said: "Such a trust does not affect the deed, but acts upon the gift, as it reaches the possession of the grantee; and the foundation for the trust is, that equity will then interfere and raise a trust in favor of the persons intended to be benefited, in order to prevent a fraud."

Mr. Pomeroy, in his work on Equity Jurisprudence, (vol. 2, sec. 1054,) says: "Whenever a person procures a devise or bequest to be made directly to himself,—and thereby preventing, perhaps, an intended testamentary gift to another,—through false and fraudulent representations, assurances or promises that he will carry out the original and true purpose of the testator, and will apply the devise or bequest to the benefit of a third person who is the real object and who would otherwise have been the actual recipient of the tes-

tator's bounty, and after the testator's death he refuses to comply with his former assurances or promises but claims to hold the property in his own right and for his own exclusive benefit, in such case equity will enforce the obligation by impressing a trust upon the property in favor of the one who has been defrauded of the testator's intended gift, and by treating the actual devisee or legatee as a trustee holding the mere legal title, and by compelling him to carry the trust into effect through a conveyance to the one who is beneficially interested." We think it can make no difference whether the title is obtained by will or by deed, and see no difference, in principle, between the case stated by the author and the case at bar.

We are impressed, from a careful examination of this record, in view of the foregoing authorities, that the position assumed by Frank A. and John Stahl with reference to the property in question must be held to be constructively fraudulent, and by reason of that fact think this a case in which a court of equity may properly raise a constructive trust and fasten it upon the conscience of John Stahl, the present holder of the legal title, and convert him, as the holder of such title, into a trustee for the benefit of all the children of Fredericka L. Stahl, deceased, who in equity must be held to be the beneficial owners of said property. *White* v. *Ross,* 160 Ill. 56.

The cases relied upon by appellees we are of the opinion are not in point. Those cases, it will be found upon examination, are cases in which no fraud, actual or constructive, or fiduciary relation between the parties, was found to exist.

The decree of the superior court will be reversed and the cause remanded to that court, with directions to enter a decree in accordance with the views herein expressed.

*Reversed and remanded, with directions.*