CHARLES HILT

*v.*

HATTIE SIMPSON *et al.*

*Opinion filed October 23, 1907—Rehearing denied Dec. 4, 1907.*

1. TRUSTS—*when court of equity will raise a constructive trust.* Where property is conveyed to the grantee upon his parol promise to the grantor to convey the same to third persons upon the grantor's death, a court of equity will raise a constructive trust and convert the grantee into a trustee for the benefit of such third persons. (*Stahl* v. *Stahl,* 214 Ill. 131, followed.)

2. SAME—*facts showing constructive trust may be proved by parol evidence.* Under the proviso to section 9 of the Statute of Frauds, resulting trusts, or trusts created by construction, implication or operation of law, need not be in writing but may be proved by parol.

WRIT OF ERROR to the Circuit Court of Madison county; the Hon. B. R. BURROUGHS, Judge, presiding.

This is a bill in chancery filed by Hattie Simpson and Orilla Bonham, against Charles E. Hilt and others, to establish a resulting or constructive trust in certain real estate conveyed to Charles E. Hilt by Joseph Hilt December 18, 1903. The circuit court of Madison county, upon hearing, sustained the bill and entered a decree finding that Charles E. Hilt was a trustee of the legal title for the use of complainants, and ordered a conveyance of the legal title to the complainants in equal parts. Charles E. Hilt sues out this writ of error to obtain a review of the cause by this court.

Joseph Hilt was the father of five children,—three sons, Charles E., Stephen and Henry Hilt, and two daughters, Hattie Simpson (*nee* Hilt) and Orilla Bonham (*nee* Hilt.) Prior to June 10, 1890, Joseph Hilt was the owner of a farm, located in Madison county, of one hundred acres, valued at about $9000 or $10,000. He also owned a twelve-acre tract of land, which is designated as the "St. Jacobs property." This piece of land is valued at about $3500. On

June 10, 1890, Joseph Hilt conveyed the one hundred acre farm to his three sons by way of gift, reserving the rents and profits during his natural life. Prior to December 18, 1903, Joseph Hilt resided on the twelve-acre tract with Amanda J. Hilt, who was his third wife. The evidence shows that it was the fixed purpose of Joseph Hilt to make a distribution of his property among his five children; that in pursuance of this purpose he had conveyed the one hundred acre farm to the three sons, and that he retained the St. Jacobs property with the intention ultimately of giving it to his two daughters. The evidence shows that Joseph Hilt caused a will to be prepared, in which he devised the St. Jacobs property to the daughters, but for some reason the will was never fully executed. In the year 1903 domestic troubles arose between Joseph Hilt and his wife, which finally resulted, on December 18, 1903, in a separation, and in consideration of $500 paid her the wife released Joseph Hilt from any further liability for her maintenance and from paying any debts that might be made by her. It was also understood that Amanda J. Hilt would join her husband in a conveyance of the St. Jacobs property to any one whom he might designate. Philip Baer, a lawyer residing at St. Jacobs, was the confidential friend and adviser of Joseph Hilt. On the day of the separation Joseph Hilt consulted with his attorney in regard to a conveyance of the St. Jacobs property in such way that Joseph Hilt could retain the control of the property and enjoy the rents and profits thereof during his life and that the two daughters would succeed to the remainder at his death. Joseph Hilt requested Mr. Baer to take the title in his name and hold it for the daughters. This Mr. Baer declined to do and told him to make some other arrangements. Joseph Hilt then said he would see Henry, and later he said he would see his son Charles, and afterwards he conveyed the property in question to his son Charles, with the understanding that Charles should deed it to his sisters after his father's death.

At the time the deed was executed two mortgages were made by Charles E. Hilt and his wife,—one to secure a note of $250 and the other a note of $2750. The $250 note and mortgage were made to Mr. Baer to secure a loan to Joseph Hilt, made to raise a part of the money paid to Amanda J. Hilt in settlement of her claim for maintenance. This $250 note was subsequently paid by Joseph Hilt. The $2750 note was retained by Joseph Hilt as a sort of security that Charles E. Hilt would carry out his agreement. Soon after the execution of these several instruments, Joseph Hilt, being without any home of his own, went to reside with plaintiff in error, Charles E. Hilt. About six weeks after its date the $2750 note was canceled by Joseph Hilt. Joseph Hilt remained in the family of his son Charles until his death, which occurred on March 4, 1905. After the death of his father Charles E. Hilt was called on to convey the St. Jacobs property to his two sisters, defendants in error, and while he admitted to many persons that he received the title to these premises with the understanding and promise on his part that he would convey it to his sisters after his father's death, he has neglected and refused to execute the trust, denies the same now, sets up title in himself, claims that the deed was made in consideration that he would support his father during his lifetime, and pleads and relies on the Statute of Frauds.

L. P. ZERWECK, J. PAUL CARTER, and DILL & PFING-STEN, for plaintiff in error.

B. G. WAGGONER, (D. H. MUDGE, of counsel,) for defendants in error.

Mr. JUSTICE VICKERS delivered the opinion of the court:

This case was heard on evidence introduced in open court. The judge who tried it saw the witnesses and had opportunities of determining their credibility that are not

open to us. Under such circumstances this court will not
reverse a case on the evidence unless the finding is against
its clear weight. (*Fabrice* v. *Von der Brelie,* 190 Ill. 460;
*VanVleet* v. *DeWitt,* 200 id. 153; *Dowie* v. *Driscoll,* 203
id. 480; *Village of St. Anne* v. *Coyer,* 223 id. 96.) Such
is not the state of this record. We have read all of the
evidence and we are entirely satisfied with the conclusion
reached by the court upon the facts.

Plaintiff in error insists that his defense under section 9
of chapter 59 of Hurd's Revised Statutes of 1905 is valid,
even conceding that the weight of the evidence establishes
a parol promise on his part to hold the title in trust and to
convey to his sisters on the death of their father, because
there is no written evidence of such trust as required by the
statute. Assuming the facts to be as found by the court
below, plaintiff in error's position cannot be sustained. The
section of the statute relied on by plaintiff in error is as fol-
lows: "All declarations or creations of trusts or confidences
of any lands, tenements or hereditaments, shall be mani-
fested and proved by some writing signed by the party who
is by law enabled to declare such trust, or by his last will
in writing; or else they shall be utterly void and of no ef-
fect: *Provided,* that resulting trusts or trusts created by
construction, implication or operation of law, need not be
in writing, and the same may be proved by parol."

Under the facts found, this case falls under the proviso
in the above statute as construed by this court in *Stahl* v.
*Stahl,* 214 Ill. 131, and previous decisions of this and other
courts cited and reviewed in the above case. This case can
not be distinguished in principle from *Stahl* v. *Stahl, supra,*
and the line of cases upon which that decision rests. In
that case, as in this, the ancestor made a conveyance to one
of her children with the understanding that the grantee
would divide and distribute the estate equitably between the
brothers and sisters of the grantee. After the death of the
grantor the grantee conveyed to another of his brothers,

who had full notice of the fiduciary relations between the mother and the first grantee. Upon a full review of the cases it was there determined by this court that the facts presented a case in which a court of equity may properly raise a constructive trust and convert the holder of the legal title into a trustee for the benefit of all the children of the deceased mother. If the authorities in this State were again reviewed by us it would be but a repetition of what we have already said in our former decisions upon a state of facts essentially like the facts in this case.

For the reasons given in *Stahl* v. *Stahl, supra,* and upon the authority of that case, the decree of the circuit court of Madison county is affirmed.

*Decree affirmed.*