(No. 33441.—

ADELE M. MALEY *et al.*, Appellees, *vs.* ESTELLE M. BURNS *et al.*—(ESTELLE M. BURNS, Appellant.)

*Opinion filed May 20, 1955.*

Cassidy, Sloan & Cassidy, of Peoria, for appellant.

Burrel Barash, Robert C. Stoerzbach, and Nelson & Gustafson, all of Galesburg, and Bell, Farrar & Scott, of Rock Island, for appellees.

Mr. Justice Klingbiel delivered the opinion of the court:

The executor of the will of Mary Maley, deceased, and certain beneficiaries thereunder brought suit in the circuit court of Knox County against Estelle Burns and others, seeking to set aside two deeds from decedent to Estelle Burns dated July ·12, 1947, and November 24, 1948, or to establish a trust in the properties conveyed thereby. The court dismissed the complaint for want of equity as to the deed of July 12, 1947. It further decreed that Estelle Burns holds the real estate conveyed by the deed of November 24, 1948, in trust to sell the same and to make certain designated payments from the proceeds. A freehold being involved, defendant Estelle Burns appeals directly to this court from that part of the decree establishing a trust in the property conveyed by the 1948 deed, and plaintiffs and certain of the defendants have perfected a cross appeal as to other portions of the decree.

The complaint alleged that the conveyances were obtained by undue influence on the part of appellant. It also alleged that decedent did not intend to convey absolute title to the real estate, but conveyed the properties only

for the purpose of having appellant manage and operate them for decedent's benefit. The answer filed by appellant merely denied the material allegations of the complaint. The Statue of Frauds has not been invoked as a defense. The cause was referred to a master in chancery to take the proof and report his conclusions. After hearing the evidence he made his report finding that no fiduciary relationship existed between decedent and appellant; that neither deed was made as a result of any undue influence upon decedent; and that on the dates of the conveyances they were intended as absolute conveyances and were not made for the purpose of management or operation of the properties for decedent's benefit. The master recommended that a decree be entered declaring appellant the absolute owner of each of the parcels of real estate. As to the real estate conveyed by the 1947 deed the chancellor entered a decree in accordance with the recommendations of the master. With respect to the property conveyed by the 1948 deed, however, the court set aside the master's findings and decreed that at the time of the conveyance appellant occupied a confidential or fiduciary capacity with decedent, that the conveyance was made without any undue influence by aplant or anyone acting in her behalf, but that the deed was executed and delivered, by reason of the confidential and fiduciary relationship, in trust to sell the real estate and pay the net proceeds as follows: (1) pay $4000 to Adele M. Maley, $1500 to Fred L. Maley, $500 to each Robert F. Maley, William F. Maley, Estelle Trost and Elizabeth Maley Teamster, and $500 for the saying of masses for decedent; (2) pay all just claims or indebtedness against the estate of Mary E. Maley, deceased (except the claimed indebtedness of said estate to Adele M. Maley and Fred L. Maley), and pay all costs of administration of said estate; and (3) pay to Estelle Marie Burns, the appellant, the balance remaining after the payment of the items designated in (1) and (2) above. It was further decreed that

if the net proceeds of sale were insufficient to pay such items then appellant shall account for all rents, issues and profits received from the real estate and apply the same to the payment of said items.

The evidence discloses that Mary Maley, a spinster about 80 years of age, died on May 16, 1949, leaving a surviving sister, Adele Maley, two brothers, Fred Maley and William Maley, and a number of nieces and nephews. About nine years before her death she had met with an accident which crippled her. She was taken to a hospital in Galesburg, where she remained an invalid until the time of her death. The sister, Adele, managed certain rental real estate owned by Mary Maley, collecting the rents, paying taxes and insurance, and carrying out directions as to maintenance and repair. In October, 1948, Mary revoked Adele's authority to manage her business affairs, and published a notice in a newspaper that she had no agent authorized to transact any of her business.

The appellant, Estelle Burns, was a niece of Mary Maley. She resided in Peoria, about fifty miles from Galesburg, and visited her aunt about once a month. Mary Maley was appellant's godmother, and a close and friendly relationship existed between them. On July 12, 1947, Mary Maley executed a deed to appellant conveying certain real estate in Galesburg having a value of about $6000. The deed bore the signatures of two witnesses in addition to the usual acknowledgment, and was received by appellant through the mail in the fall of 1947. She was not present when the deed was executed, and had no prior knowledge of it. She testified that her aunt had told her to keep the deed, but had made no further statement to her about it. Appellant did not take possession of the property or perform any other acts of ownership until about a year after receipt of the deed.

On Memorial Day, 1948, appellant's brother, Charles Burns, was in Galesburg visiting his mother's grave. He

then went to the hospital to see Mary Maley. In the course of their conversation she said to him: "I want to ask you if you would be offended if I would deed my property to your sister Estelle. I am her godmother." He replied that it was her property and she could do what she wanted with it. On November 24, 1948, appellant came to Galesburg at the request of Mary Maley, who then stated that she was conveying her property to appellant. A deed was drafted by Mary Maley's attorney covering her other real estate in Galesburg, which had a value of about $27,500, and she signed it in the presence of her attorney and the appellant. Prior to execution of this second deed Mary Maley insisted that she have witnesses to it, saying "I don't want anybody to say I was crazy after this is signed." Accordingly, the same two persons who had witnessed the deed of July 12, 1947, acted as witnesses to the signing of this deed, and the attorney took the acknowledgment as notary public. The attorney testified that before the deed was signed he asked Mary Maley if it was "the deed you want to sign and convey your property to Estelle Marie Burns," that Mary Maley replied "It absolutely is," and that no further conversation took place.

On October 20, 1948, Mary Maley had signed a written memorandum or purported "contract" in which she expressed the desire that her brother Fred should manage her properties, and in which she agreed to pay him for such services. The writing contained the following statement: "I will put all my deeds in trust of Estelle Burns to make sure of my obligations." Fred Maley testified that Mary thereafter frequently requested him to sell her properties for her; that he was at the hospital on November 24, 1948, the day the second deed was signed, and that Mary then told him she intended to give deeds to appellant in trust so the properties could be sold if she became incapacitated. The attorney who had prepared the deed of November 24, 1948, testified that a short time thereafter

appellant requested him to prepare a quitclaim deed conveying all of the property back to Mary Maley; that such a deed was prepared, signed by appellant and given to her; and that the witness never saw it again. He further testified that the quitclaim deed was prepared for use "in case Mary should change her mind and make up her mind that she wanted to make a change with Estelle."

Appellant testified that in the latter part of December, 1948, or the first part of the following month, she had a conversation with Mary Maley in which the latter said appellant could, if she chose, sell some of the properties and pay certain sums to Adele, Fred, certain nieces and nephews, and have some masses said. After Mary's death appellant sent or caused to be sent the following letter to Fred Maley and others:

"To Whom It May Concern

I intend to carry out the following last wishes of Aunt Mary: Four Thousand dollars to Adele.

One thousand dollars (fifteen hundred) if possible, to Fred.

A sum of five hundred dollars to each of the following nieces and nephews: Bob M., Forrester M., Estelle Trost, and Elizabeth Eleanor (note, George and Charles B. get nothing.)

Five hundred dollars for masses.

It is my intentions to sell as much of the property as will be necessary to meet these requests.

I am especially requested that anyone who starts or joins in legal proceedings against these, my last wishes, shall get nothing."

Appellees also introduced into evidence a postcard mailed by appellant to Fred Maley on August 28, 1949, in which she stated "I have only one course morally to follow. I intend to fulfill Mary's wishes and merit the confidence she placed in me." At the time of her death Mary Maley had assets of very small value, and substantial claims were filed against her estate. It is conceded that the conveyances in question were made without any consideration.

Appellees' claim that a fiduciary relationship existed between Mary and her niece, Estelle, finds no support in

the record. The evidence shows only a normal relation of trust and affection. There is no proof that Estelle had gained any superiority or domination over her aunt, that she had ever been entrusted with any important financial or business affairs of her aunt, or that Mary was lacking in ordinary business knowledge. To sustain a finding that a fiduciary relation exists special confidence and trust on one side and domination and influence on the other must be proved. (*Moneta* v. *Hoinacki,* 394 Ill. 47.) The burden of proving facts from which a fiduciary relationship would arise is on the one who attempts to set aside a conveyance; and where the relationship is sought to be established by parol evidence, the proof must be clear, convincing, and so strong, unequivocal, and unmistakable as to lead to but one conclusion. (*Kolze* v. *Fordtran,* 412 Ill. 461.) The evidence in this record clearly fails to meet such a test, and we are therefore unable to agree with the trial court's finding that a fiduciary relationship existed.

The principal question is whether the evidence is sufficient to support the finding that an express trust was created. Appellees rely upon Mary's expressed intention to put her deeds "in trust of Estelle Burns," and upon appellant's letters, written after the deed was made, wherein she indicated her intention to carry out certain "last wishes" of her aunt. In our opinion, however, such evidence is entirely insufficient to show that at the time the deed was made there was an agreement or direction to hold the property in trust. The statements of Mary Maley to the effect that she intended to convey her property in trust do not show that the subsequent conveyance was in fact so made. The testimony of her attorney, Fred O'Brien, who was present in the hospital room when the transaction occurred, shows, on the contrary, that no trust was created. He testified that at Mary's request he prepared the deed in absolute form and brought it to her at the hospital; that she read it over; and that she explicitly stated she wanted

to convey the property to Estelle Burns. Had the deed been intended only for the purpose of having her sell the property and make the elaborate distribution found in the decree, such intention would in all probability have been expressed at the time of the transfer. If Mary had wished to create such a trust, no reason appears why she would not have requested her attorney to draw the appropriate instrument to carry her desires into effect. This she did not do, however. Instead she directed him to prepare the absolute deed to appellant, and stated at the time of the conveyance that the deed correctly represented her intention.

The subsequent statements of appellant, by which she indicated an intention to fulfill the last wishes of her aunt, cannot be given the effect urged by appellees. The transaction was complete when the deed was made and delivered, and the statements later made by Estelle could not change her title. According to her testimony, and there is no evidence to contradict it, these wishes of her aunt were expressed to her during a conversation which occurred in December of 1948 or January of 1949, a time subsequent to the delivery of the deed. Moreover, the testimony is that Mary left it in the discretion of Estelle to make the distributions referred to.

It is clear that the evidence in this record cannot sustain the trust found by the trial court. To impress a trust upon property by parol evidence it is essential, even though the Statute of Frauds is not pleaded, that the facts be established by clear and convincing proof, and unless the testimony is of that character the court must deny relief. (*Ford* v. *Lighthall,* 328 Ill. 107.) The proof must be clear, convincing and so strong, unequivocal and unmistakable as to lead to but one conclusion, and if the evidence is doubtful or capable of reasonable explanation upon any other theory, it is not sufficient. (*Lasky* v. *Smith,* 407 Ill. 97.) The evidence must be clear and certain not only as to the existence of the trust but also as to its terms,

which include the subject matter, the beneficiaries, the nature and quantity of the interests which they are to have and the manner in which the trust is to be performed. (*Illinois State Trust Co.* v. *Jones,* 351 Ill. 498.) It is apparent that the record in this case falls far short of satisfying these tests.

In *Winkelman* v. *Winkelman,* 307 Ill. 249, a grantor seventy-seven years old and confined to his room with illness conveyed substantially all his real estate to one of his three daughters by deed absolute in form. In a suit to declare a trust for the benefit of all three children on the death of the grantor and his wife, the testimony showed that the conveyance was never discussed with the grantee prior to delivery of the deed, and that she had no knowledge or information it was to be made. After delivery of the deed the grantor told his daughter the income was to be used for the support of himself and his wife during their lives; and the daughter later made statements tending to show an acknowledgment that she held the title in trust for the three children after the parents' death. She testified her intention was to use the income for the support of her father and mother, and after they were dead to divide the net income equally among the three children, but denied she made any promise to her father to hold the title in trust. We held that the evidence did not prove an agreement to hold the title in trust for the benefit of all three children, even though it appeared the grantor supposed later an equitable division would come between the heirs, and that the grantee's subsequent expressions of intention to share the income with the other children did not change the title acquired by the deed. A decree of the trial court establishing a trust in the property was reversed as being against the manifest weight of the evidence.

*Stahl* v. *Stahl,* 214 Ill. 131, relied upon by appellees, is distinguishable from the case at bar in that the evidence sufficiently showed a promise by the grantee to hold the

title in trust. In that case a mother seventy-two years of age and confined to her bed with illness executed a deed to one of her sons covering premises which constituted virtually all the property she owned. The deed purported to be an absolute conveyance and was made without consideration. Her five children were assembled in her house at the time, and, in the suit to establish a trust in favor of all the children, gave different versions of what was intended by the transaction. One of the daughters, however, testified that the children had talked the matter over and had agreed it was advisable to have the mother make a deed to the premises so a division could be made among them without expense after her death; that a lawyer was called who prepared a deed conveying the property to the son; that they then explained to their mother she might not recover from her illness and they thought it best she execute some papers; that the mother said to her children, "Is it your wish to have this paper made?" and they said, "yes," whereupon she was held up in the bed and signed the deed. It was held that the trial court was justified in finding there was an express parol agreement to hold the property in trust for the benefit of all the children. In the case at bar, on the other hand, there is no testimony showing a promise or agreement on the part of Estelle to hold the property in trust. Her later statements of intention to carry out the "last wishes" of her aunt had reference not to any directions made at the time of the conveyance but to Mary's desires expressed after the deed was signed and delivered. As we have indicated, such evidence cannot change the nature of the title previously taken. The *Stahl case*, therefore, is not controlling in the case at bar.

Appellees urge that the master's findings are advisory only and are not binding upon the trial court or this court. It was the master's province in the first instance, however, to determine the issues, and while his findings of fact do not carry the same weight as the verdict of a jury, or the

findings of a chancellor where the evidence has been taken by the court, yet his findings are entitled to due weight on review of the cause. (*Kolze* v. *Fordtran,* 412 Ill. 461.) Since the chancellor did not hear any testimony in open court, we are not bound by the rule that the findings of the chancellor will not be overruled unless manifestly against the weight of the evidence. *Kolze* v. *Fordtran,* 412 Ill. 461.

Appellees by their cross appeal further contend the trial court erred in not holding that the deed dated July 12, 1947, was made in trust for the benefit of the grantor. The position cannot be sustained. This deed was prepared without the knowledge of appellant and was received by her through the mail in the fall of 1947. The record fails to disclose any evidence that it was not the free and voluntary act of the grantor and understood to be an absolute conveyance. The statements of Mary's intention to put her property "in trust of Estelle Burns" occurred subsequent to the 1947 deed, and are not evidence of the manner in which appellant had taken title by such deed. A trust, when provable by parol evidence, must exist at the time the deed is delivered. (*Rubin* v. *Midlinsky,* 321 Ill. 436.) The fact that appellant exercised no acts of ownership over the property for a year after she received it certainly does not prove she promised to hold it in trust for the grantor. Appellees have failed to show any evidence to establish a trust in the real estate conveyed by the 1947 deed, and the circuit court properly declared appellant the absolute owner thereof.

Both deeds involved in the case at bar were in form absolute conveyances of the fee, and the presumption arising therefrom is that they correctly expressed the whole intention of the parties. While the presumption may be overcome by evidence in a proper case, this can be done only by clear and satisfactory proof. It is apparent the evidence in this record is not of that character.

22

We have considered other contentions and arguments of appellees and find them to be without sufficient merit to warrant further discussion. The decree of the circuit court is affirmed as to the real estate conveyed by the deed dated July 12, 1947. Insofar as it establishes a trust in the real estate conveyed by deed dated November 24, 1948, the decree is reversed, and the cause remanded to the circuit court of Knox County with directions to enter a decree in accordance with the findings and report of the master.

*Affirmed in part and reversed in part,*
*and remanded with directions.*